FILED '09 APR 08 : 4:09 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BERNIS R. HARRIS, JR.,                           08-CV-6127-TC

               Plaintiff,                    OPINION AND
                                                    ORDER

       v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

               Defendant.
_____

COFFIN, Magistrate Judge:

<u>Background</u>

    Plaintiff Bernis Harris ("Claimant") brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the

Page 1 - OPINION AND ORDER

Social Security Act.  This court has jurisdiction pursuant to 42
U.S.C. § 405(g).

Claimant was born on August 19, 1968.  Tr. 152.[1]  He has
completed a GED.  Tr. 923.  His most recent work experience
includes work as a cook and security guard.  Tr. 108.  Claimant
alleges disability beginning on March 29, 2002 as a result of
degenerative disc disease and obesity.  Tr. 107, 131.

On appeal to this court, Claimant contends that the ALJ erred
by:  (1) failing to find Claimant disabled from March 2002 through
September 2006, or at least through November 2003; (2) failing to
give clear and convincing reasons for rejecting the opinion of Dr.
Daniel Stanheiser ("Dr. Stanheiser"); (3) failing to give proper
credit to lay testimony; and (4) failing to meet his burden of
proving that Claimant retained the ability to perform "other work"
in the national economy.  For the following reasons, the
Commissioner's decision is reversed and remanded for further
proceedings.[2]

## Standard of Review

The initial burden of proof rests on the claimant to establish
disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).
To meet this burden, a claimant must demonstrate an "inability to

---

[1] "Tr." refers to the official transcript of the
administrative record.

[2] The parties have consented to jurisdiction by a magistrate
judge pursuant to 28 U.S.C. § 631(c)(1).

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## Disability Analysis

The ALJ applied the five-step disability determination procedure described in 20 C.F.R. § 404.1520. See Bowen v. Yuckert, 482 U.S. 137, 141-42 (1987). The claimant bears the burden of

proof at steps one through four.   See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).   The burden shifts to the Commissioner, at step five, to identify jobs existing in significant numbers in the national economy that the claimant can perform.   Id.; see also 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity at any time relevant to the ALJ's decision.   Tr. 15; see § 404.1520(b).

At step two, the ALJ found that Claimant had the following severe impairments: degenerative disc disease, asthma, obesity, history of diabetes, narcotic habituation, and mood disorder.   Tr. 15; see § 404.1520(c).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in Appendix 1.   Tr. 17; see § 404.1520(d).

The ALJ concluded that Claimant had a residual functional capacity ("RFC") to perform light work limited to simple tasks with no repetitive or continuous bending or stooping, no crawling, no kneeling, and no reaching overhead or above shoulder level.   Tr. 17; see §§ 404.1520(e), 404.1567.

At step four, the ALJ concluded that Claimant was unable to perform any past relevant work.   Tr. 22; see § 404.1520(f).

At step five, the ALJ concluded that jobs that Claimant can perform exist in significant numbers in the national economy, including small products assembler, electronics worker, and food/beverage order clerk. Tr. 22; see § 404.1520(g).

Discussion

I.    ALJ's Determination That Claimant was not Disabled

    A.    Medical Evidence

        1.    Standard

The Ninth Circuit distinguishes among the opinions of three types of physicians:    (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).   Where a treating or examining physician's opinion is uncontradicted, the Commissioner must provide "clear and convincing" reasons for rejecting the opinion. Id.  The Commissioner may not reject the opinion of a treating or examining physician, even if contradicted by another physician, unless the rejection is for specific and legitimate reasons, supported by substantial evidence in the record.  Id. at 830-31. The opinion of a non-examining physician cannot, by itself, constitute such substantial evidence.  Id. at 831.

"The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002.    When

determining the weight of the opinion of a treating physician, the ALJ will consider the length of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i). The ALJ will also consider the nature and extent of the treatment relationship. § 404.1527(d)(2)(ii). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." § 404.1527(d)(3). The ALJ "will always give good reasons in [the] notice of determination or decision for the weight [the ALJ gives] your treating source's opinion." § 404.1527(d)(2).

2. <u>Treatment History</u>

Claimant argues that the ALJ erred in determining that the other medical evidence supported the conclusion that the Claimant was not disabled between March 2002 and September 2006. Claimant regularly received treatment from doctors at the Douglas Medical Clinic ("DMC") for back pain from his first visit on February 19, 2002 until he underwent L5-S1 surgery on August 11, 2003. Tr. 586, 587, 588, 589, 591, 594, 596, 604, 606, 608, 610, 615, 617, 620, 622, 624, 626, 628, 631. Dr. L. Lee McCollough's treatment notes indicate that as of October 24, 2002, Claimant was working part-time as a cook. Tr. 608. On January 8, 2003, Family Nurse Practitioner Judith Stensland prescribed discontinuation of work

until further notice due to lumbar radiculopathy.   Tr. 601-02. However, as of August 1, 2002, eleven days prior to Claimant's L5-S1 surgery, Claimant's physical therapist noted that Claimant reported "some improvements in pain levels and tolerance for activities of daily living with therapy." Tr. 226.  Following Claimant's L5-S1 surgery, Dr. Donald Ross reported that Claimant was recovering "uneventfully with some residual radicular symptoms and chronic back pain." Tr. 277.  Dr. James Leslie noted that numbness that Claimant had suffered prior to the surgery "now seems to be resolving very nicely." Tr. 585; see also Tr. 580-84.

Despite the apparent success of the L5-S1 surgery, Claimant reported pain in his neck as soon as September 2003. Tr. 580-82. Dr. Ajay Tripuraneni's ("Dr. Tripuraneni") treatment notes on November 6, 2003 reveal that an MRI of Claimant's C-spine done in August revealed "degenerative changes from C4 to C7 with significant stenosis at 6 to 7 and the spinal cord, resulting in spinal cord compression." Tr. 577.  Claimant subsequently underwent a cervical fusion procedure on November 6 or 7, 2003. Tr. 297, 576.   Following this procedure, Dr. Tripuraneni's treatment notes reveal that "[t]he patient postoperatively had a good recovery." Tr. 297.  On November 19, 2003, Dr. Harold Anderson noted that Claimant had "dramatic improvement in the peripheral distribution of neuropathy to his hands, and amazingly he his [sic] doing very well walking on his own without any bracing

since fusion and, quite frankly, doing a whole lot better than I would have thought." Tr. 576. Even after this procedure, however, Claimant continued to be treated for chronic pain in the neck. Tr. 568, 570-73, 575.

The ALJ correctly noted that on May 17, 2004, Claimant underwent a CT scan that revealed:

> Mild anterior compression of the cervical cord noted, especially at C5, C6 and C6-7, although minimal. At C6-7, there may be minimal compromise of the exiting right C7 nerve root and clinical correlation is advised. However, the findings are subtle. There is no evidence for significant protruding disc or retained disc material affecting the cervical cord or exiting nerve roots.

Tr. 19, 445. Claimant argues that the discovery of mild compression of the cervical cord is evidence of continued disability. The ALJ, however, used the results of the same CT scan, including (1) the fact that the compression is minimal; (2) the fact that the findings are subtle; and (3) the fact that there is no evidence of significant protruding disc, to support the conclusion that Claimant was not disabled. Tr. 19.

Based on the above medical evidence, Claimant was clearly unable to work for periods of time between March 2002 and September 2006. The evidence is not clear as to whether Claimant was unable to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to last for a continuous period of not less than 12 months. On the one hand, Claimant suffered from a series of ailments which

required at least two separate procedures and continued treatment following those procedures. On the other hand, following both procedures, Claimant exhibited positive and even dramatic improvement. Additionally, Claimant was able to engage to some degree in activities of daily living. This is evidenced by the fact that Claimant was able to work for at least a period of time while seeking treatment and the lay witness testimony discussed below. Because this medical evidence is substantial, relevant such that a reasonable mind might accept it as adequate to support the ALJ's conclusion, this court affirms the ALJ's evaluation of this treatment history. See Andrews, 53 F.3d at 1039.

       3.  Dr. Stanheiser

Plaintiff argues that the ALJ failed to give clear and convincing reasons for rejecting the opinion of Dr. Stanheiser.

Dr. Stanheiser opined that Claimant would be unable to perform neither light nor sedentary work eight hours per day, five days per week with normal breaks and absences of less than two days per month. Tr. 754. Dr. Stanheiser noted that Claimant could work "2 hours/day [with] breaks of light duty (sedentary)." Tr. 754. The ALJ rejected this opinion because it was vague and did not make reference to findings on examination or the use of medically acceptable diagnostic techniques. Tr. 22. The ALJ also noted that "[w]hereas the claimant has had findings in the cervical and lumbar spine, his surgeries were successful, as evidenced by subsequent

imaging studies that have noted no major findings or unchanged examinations." Tr. 22. The ALJ then concluded that any remaining limitations were adequately addressed by the RFC of light work subject to certain limitations. Tr. 22.

The ALJ correctly noted that Dr. Stanheiser's opinion was vague. Specifically, he recorded his opinion in response to check-the-box questions requiring only answers of yes or no. Tr. 754. The only notations that he made following the answers to these questions were the identical and vague comments mentioned above. Tr. 754.

The ALJ, however, failed to consider the entirety of Dr. Stanheiser's treatment relationship with Claimant. Dr. Stanheiser had a treating relationship with Claimant at the Umpqua Community Health Center ("UCHC") from May 2005 to December 2005. Tr 712-40.

Claimant consistently complained of neck and back pain at his visits to the UCHC from May 2005 to December 2005. Tr. 713, 715, 717, 719, 721, 723, 725, 727, 729, 731, 733, 735, 737, 739, 741. The treatment notes of Dr. Stanheiser and other doctors at the UCHC indicate that Claimant was consistently treated with medication. Tr. 712, 714, 716, 718, 720, 722, 724, 726, 728, 730, 732, 734, 736, 740, 742-46. On June 20, 2005, Dr. Stanheiser described Claimant's neck pain as "stable" on the medication. Tr. 732. On June 20, 2005, Dr. Stanheiser noted that Claimant had a "2" sear" of the back. Tr. 732. On August 19, 2005, Dr. Stanheiser noted

that Claimant suffered from "marked spasm." Tr. 715. Dr. Stanheiser observed that Claimant's back pain was exacerbated by bending and stooping and that Claimant had an unstable gait. Tr. 716. After Claimant's next visit on December 5, 2005, Dr. Stanheiser noted that Claimant's back pain had improved. Tr. 714. After Claimant's last visit to the UCHC on December 21, 2005, Dr. Stanheiser noted that Claimant's lower back and neck pain were "active" and that Claimant was scheduled to get an MRI on December 29. Tr. 712.

Although Dr. Stanheiser's opinions as expressed on the forms provided by Claimant's attorney are vague, they are supported by the treatment notes kept by Dr. Stanheiser and the UCHC during the Claimant's care.[3] The ALJ failed to even mention these treatment notes when considering Dr. Stanheiser's opinion. Accordingly, the ALJ erred by not giving "good reasons" as to why, in light of the notes documenting his relationship with Claimant as a treating physician, Dr. Stanheiser's opinion is not given any weight. See § 404.1527(d)(2).

B.   Lay Evidence

Claimant next argues that the ALJ erred by giving no significant weight to the lay witness evidence provided by

_____

[3] Claimant was treated by other doctors at the UCHC during the same period. Tr. 720-31, 738-741. During those visits, he consistently complained of neck and back pain and was treated with medication consistent with treatment provided by Dr Stanheiser. Tr. 720-31, 738-741.

Claimant's mother, Janis Harris ("Ms. Harris"). "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Comm'r, Soc. Sec. Admin., 545 F.3d 1050, 1053 (9th Cir. 2005). Because lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence, it cannot be disregarded without comment. Id. Accordingly, if the ALJ discounts lay testimony, he must give reasons that are germane to each witness. Id.

The ALJ in this case gave no significant weight to the evidence provided by Ms. Harris because she described, in addition to Claimant's limitations, extensive activities of daily living that Claimant engaged in. Tr. 21. Indeed, Ms. Harris indicated that Claimant's condition affects his ability to lift, squat, bend, reach, walk, sit, kneel and climb stairs. Tr. 21, 148. Ms. Harris also observed that Claimant is limited to lifting 10 lbs., sitting for periods of 20 minutes, walking up to 1 mile, and an inability to bend. Tr. 21. However, despite these limitations, as the ALJ observed, Ms. Harris acknowledged that Claimant is able to substantially participate in activities of daily living with little or no difficulty, including: (1) care for a 15-year-old daughter, (2) cook, (3) clean, (4) personal care, (5) yard work, and (6) fishing. Tr. 144-47. These contradictory observations certainly

constitute a reason germane to Ms. Harris for disregarding her observations.

Claimant argues that the ALJ erred by not acknowledging the fact that Ms. Harris observed that Claimant had to "sit down a lot" when cooking. Tr. 145. The fact that the ALJ did not acknowledge this observation does not resolve the apparent contradiction among the other observations made by Ms. Harris. Claimant's need to periodically sit while cooking does not negate the fact that he is able to substantially participate in activities of daily living. Thus, it does not negate the legitimacy of the reasons provided by the ALJ germane to Ms. Harris for disregarding her observations. Accordingly, the ALJ did not err in giving no significant weight to the lay witness testimony of Ms. Harris.

All of the parties' other arguments have been considered and found unpersuasive.[4]

II.  Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000). The issue turns on the utility of

---

[4]  This court does not reach the question of whether the ALJ erred in determining Claimant was able to perform other work in the national economy. On remand, once the medical evidence has been reevaluated in a manner consistent with this opinion, the ALJ should then reevaluate Claimant's ability to perform work at steps four and five of the disability determination procedure. See § 404.1520.

further proceedings.  A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision.  Rodriguez v. Bowen, 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited and an immediate award of benefits directed where:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.  Harman, 211 F.3d at 1178 (citing Smolen, 80 F.3d at 1292).  Of course, the third prong of this test is actually a subpart of the second.  See Harman, 211 F.3d at 1178 n. 7.  If this test is satisfied with respect to Dr. Stanheiser's testimony, then remand for determination and payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting Dr. Stanheiser's opinion. Id. at 1179.

Under the circumstances of this case, remand for further proceedings is appropriate because the Smolen test is not satisfied.  Even if this court were to accept Dr. Stanheiser's opinion as true, satisfying the first prong of the Smolen test,

and there were not outstanding issues that must be resolved, satisfying the second prong of the <u>Smolen</u> test, it is not clear from the record that the claimant is disabled, as required by the third prong of the <u>Smolen</u> test.  Specifically, conflicting medical evidence provided by various treating physicians as to Claimant's recovery from surgical procedures preclude this court from concluding with any certainty that Claimant is disabled. Thus, remand for further consideration is appropriate.

<u>Conclusion</u>

For the above reasons, the Court REVERSES the decision of the Commissioner and REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the foregoing opinion.  The ALJ shall:  (1) revisit Claimant's RFC, weighing Dr. Stanheiser's opinion against the remaining medical evidence; and (2) reconsider Claimant's ability to perform work at steps four and five of the disability determination procedure.

DATED this _8st_ day of April 2009.

_____
Thomas Coffin
United States Magistrate Judge